No. 24-1133
DISTRICT COURT CASE NO. 2:24-CR-91-ODW
RELATED CASE NO. 2:24-mj-00166-DJA-1

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ALEXANDER SMIRNOV,
Appellant-Defendant,

vs.

UNITED STATES OF AMERICA,
Appellee-Plaintiff.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

**APPELLANT'S MEMORANDUM OF LAW AND FACTS**

**IN SUPPORT OF FRAP 9(a) APPEAL**

DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Appellant
ALEXANDER SMIRNOV

## <u>**TABLE OF CONTENTS**</u>

I.     JURISDICTION……………………………………………………… 1

II.    STATEMENT OF THE ISSUE(S)……………………………………1

III.   STATEMENT OF THE CASE……………………………………….. 2

      A.    Mr. Smirnov is arrested in Nevada for crimes that do not trigger a federal presumption of detention; pretrial services recommends that Mr. Smirnov be released on conditions………………………… 2

      B.    Mr. Smirnov argues for release based on the totality of the statutory factors, pretrial services' recommendation, and the Bail Reform Act's presumption favoring pretrial release in cases involving similar charges…………………………………………………………..3

      C.    After briefing and argument, the Magistrate Judge orders Mr. Smirnov released, but on conditions more stringent than those recommended by pretrial services…………………………………………………6

      D.    While meeting with his attorneys in Las Vegas to discuss his defense two days after his release, Mr. Smirnov is arrested again on the same charges, detained without a hearing, and transported to California………………………………………………….. 13

      E.    In ordering detention after a brief hearing, the district court makes no factual findings and no discussion of the record evidence, and misapprehends the correct statutory presumption to apply to Mr. Smirnov's case…………………………………………………..15

IV.     SUMMARY OF ARGUMENT…………………………………………..20

V.     ARGUMENT……………………………………………………………..22

     A.     Because the district court's order did not provide any factual basis for its decision to detain Mr. Smirnov and disregard two pretrial services officers and a United States Magistrate Judge, this Court should remand this case for a rehearing and amended order that comports with Rule 9(a)(1) and, further, order Mr. Smirnov released under Rule 9(a)(3)…………………………………………………………... 22

     B.     Alternatively, this Court should hold that the district court clearly erred in ordering Mr. Smirnov detained before trial and should, further, order him released on the conditions set forth in the record…………………………………………………………… 25

VI.     CONCLUSION…………………………………………………….. 34

STATEMENT OF RELATED CASES……………………………………… 36

CERTIFICATE OF COMPLIANCE………………………………………… 37

CERTIFICATE OF SERVICE……………………………………………...38

# TABLE OF AUTHORITIES

## CASES

*Estrada v. Munoz*,
No. 2010 WL 1999525 (C.D. Cal. May 17, 2010)……………………..33

*Kinney v. Lenon*,
425 F.2d 209 (9th Cir. 1970)…………………………………………...33-34

*United States. v. Armstrong*,
2010 WL 5102203 (D. Ariz. 2010)………………………………….29

*United States v. Fidler*,
419 F.3d 1026 (9th Cir. 2005)……………………………………….26

*United States v. Gebro*,
948 F.2d 1118 (9th Cir. 1991)……………………………………… 5, 26-27

*United States v. Gonzales*,
852 F.2d 1214 (9th Cir. 1988)……………………………………… 24-25

*United States v. Hanson*,
613 F. Supp. 2d 85 (D.D.C. 2009)……………………………………..31-32

*United States v. Karni*,
298 F. Supp. 2d 129 (D.D.C. 2004)…………………………………..31-32

*United States v. Motamedi*,
767 F.2d 1403 (9th Cir. 1985)……………………………………… 5, 27-29

*United States v. Salerno*,
481 U.S. 739 (1987)……………………………………………………26

*United States v. Swanquist*,
125 F.3d 573 (7th Cir. 1997)………………………………………...24

*United States v. Townsend*,
897 F.2d 989 (9th Cir. 1990)……………………………………...26, 28

*United States v. Wheeler*,
795 F.2d 839 (9th Cir. 1986)……………………………………………….23-25

*Wolfish v. Levi*,
573 F.2d 118 (2d Cir. 1978)…………………………………………..5-6

## UNITED STATES CODE

18 U.S.C. § 3142……………………………………………1, 5, 10, 22, 27-28

18 U.S.C. § 3145(c)…………………………………………...1, 15

18 U.S.C. § 3231……………………………………………... 1

28 U.S.C. § 1291……………………………………………... 1-2

## I.    __JURISDICTION__

The district court had jurisdiction under 18 U.S.C. § 3231 because Appellant Alexander Smirnov was indicted in the United States District Court for the Central District of California for the federal crimes of: 1) Making False Statements to a Government Agent, in violation of 18 U.S.C. § 1001; and 2) Falsification of Records in a Federal Investigation, in violation of 18 U.S.C. § 1519.[1]

The district court announced a final order of pretrial detention pursuant to 18 U.S.C. §§ 3142(e) and 3145(b) on February 26, 2024.[2]

Mr. Smirnov timely filed a Notice of Appeal on February 29, 2024. (Doc. 41); *see also* Fed. R. App. P. 4(b)(1)(A)(i), 9(a)(1).

This Court has jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291.

## II.   __STATEMENT OF ISSUE(S)__

Whether, after independent appellate review, this Court finds that the district court clearly erred in ordering the defendant detained where: a magistrate judge and two pretrial services officers recommended his release; the court ordered the defendant rearrested and detained without notice or an opportunity to be heard; the

---

[1]     *See United States v. Smirnov*, 2:24-cr-91-ODW (C.D. Cal.) (Exhibit P).

[2]     *See* Exhibit A, B.  It should be noted that on February 22, 2024, the district court issued an Order stating that the Government's Motion for Reconsideration of the Nevada Magistrate Judge's release order had been granted. The Court issued a warrant as a result. However, that Order set a detention hearing in California, which took place on February 26, 2024. *See* Exhibit I.

court wrongfully accused the defendant's attorneys of "facilitat[ing]" their client's flight; and where, in overturning the magistrate judge's release order, the district court ignored the statutory presumption favoring release, never discussed any of the evidence adduced by the defendant, and never set forth the reasons why the defendant was (in the court's incorrect view) an unmanageable flight risk.

## III.  **STATEMENT OF THE CASE**

### A.  *Mr. Smirnov is arrested in Nevada for crimes that do not trigger a federal presumption of detention; pretrial services recommends that Mr. Smirnov be released on conditions.*

On or about February 14, 2024, Mr. Smirnov was arrested and detained in Las Vegas, Nevada, on an indictment out of the Central District of California.[3] The two-count indictment charged Mr. Smirnov with: 1) Making False Statements to a Government Agent, in violation of 18 U.S.C. § 1001; and 2) Falsification of Records in a Federal Investigation, in violation of 18 U.S.C. § 1519. *Id*.[4]

---

[3]     *See* Exhibit P.

[4]     Contrary to the district court's written order, the "false statement" offenses do not trigger a statutory presumption of detention. *Compare* 18 U.S.C. § 3142(e)(2) (incorporating section 3142(f)(1)'s roster of "presumption offenses," including crimes of violence, "an offense for which the maximum sentence is life imprisonment or death," serious drug offenses, or crimes involving minors) *and* 18 U.S.C. § 3142(e)(3) (additional "presumption offenses" include "a[] [firearm] offense under [certain inapplicable] section[s]," "an offense listed in [18 U.S.C. § 2332b(g)(5)(B) and carrying" a maximum term of imprisonment of 10 years or more," "an offense under chapter 77 . . . ," or offenses involving minors), *with* Exhibit A at 2, § I(c) (district court wrongly rules that, based on "false statement" charges, "the Government *is* entitled to a rebuttable presumption that no condition

On February 15, 2024, after making an initial appearance before the Honorable Daniel J. Albregts, United States Magistrate Judge for the District of Nevada, Mr. Smirnov was interviewed without counsel by Emily McKillip, Senior United States Pretrial Services Officer for the District of Nevada.

Officer McKillip thereafter prepared a Pretrial Services Report ("Nev. PTS") recommending Mr. Smirnov's release on conditions. The conditions essentially required that he: 1) submit to and report for supervision to the U.S. Pretrial Services Offices; 2) actively seek employment; 3) surrender any passport to U.S. Pretrial Services; 4) agree to have his travel restricted to the continental United States; and 5) avoid contact with anyone who is or may be a victim or witness in the investigation or prosecution.

### B.    Mr. Smirnov argues for release based on the totality of the statutory factors, pretrial services' recommendation, and the Bail Reform Act's presumption favoring pretrial release in cases involving similar charges.

In his motion for pretrial release filed in *United States v. Smirnov*, *United States v. Smirnov*, 2:24-mj-00166-DJA (D. Nev.), Mr. Smirnov stated that, as alleged

---

of combination of conditions will reasonably assure the defendant's appearance as required . . . .") (emphasis added).

Indeed, when defense counsel pointed out during the detention hearing that Mr. Smirnov's case was "not a presumption case," neither the Magistrate Judge nor the prosecutor contested this obvious fact. Exhibit L (Transcript of Det. Hear.) (Feb. 20, 2024) at 3.

in the indictment, he had served as a confidential human source for the FBI for several preceding years.[5] In this regard, however, he noted that while virtually all of the allegations in the indictment pertained to conduct that occurred back in 2020, the Government had waited until February 2024 to end his cooperation, seize his passports, or charge him with anything. Moreover, the two charges "false statement" offenses did *not* qualify as so-called "presumption cases," that is, cases where the charged offenses were sufficiently serious to reverse the Bail Reform Act's presumption of release and, instead, presume that pretrial detention was appropriate.

Against this backdrop, Mr. Smirnov noted that he was a 43-year-old American citizen (with dual Israeli citizenship); that the Government had possession of his United States passport; that defense counsel had possession of his Israeli passport and was prepared to surrender it forthwith to pretrial services; that he had lived in Las Vegas for several years; that, before moving to Las Vegas, had lived for 16 years in California; and that he had no criminal history of any sort. Exhibit O at 3. Mr. Smirnov added that he held a Nevada driver's license; that he had been in a years-long relationship with his significant other, Diana Lavrenyuk; and that he lived with Diana in her home in Las Vegas. Exhibit O at 5.

---

[5] Exhibit O.

Mr. Smirnov also pointed out that – in addition to maintaining stable residential ties – he also maintained strong familial ties to the United States: as would be memorialized in the sworn letters attached to his subsequent filings before Judge Wright, Mr. Smirnov noted that he extremely close for years with Diana's son (Nikolay Lavrenyuk, a former Marine Sergeant living in Washington, D.C.) and with his cousin, Linor Shefer, who worked in Florida as a real estate agent and who, like Nikolay, would end up traveling at her own expense to the Nevada detention hearing. Exhibit O at 5; *see also* Exhibit E (at Exs. 2 and 3) (letters of Nikolay Lavrenyuk and Linor Shefer, attesting to Mr. Smirnov's good character and law-abiding nature). Mr. Smirnov also noted that he had been forced to undergo seven surgeries on his eyes in the past last year, that he was required to take prescription medication daily, and that his treatment providers were in Las Vegas. Exhibit O at 6.

Mr. Smirnov argued that the Government could not prove by a preponderance of the evidence that conditions could not be fashioned to assure his appearance. *See* Exhibit O at 6-12 (arguing that under Section 3142(g), *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991), and *United States v. Motamedi*, 767 F.2d 1403, 1405-07 (9th Cir. 1985), presumption of release should be honored); *see also id*. at 10 (arguing that pretrial detention would hamstring Mr. Smirnov's ability to prepare a defense) (quoting *Maine v. Molton*, 474 U.S. 159, 170 (1985) and *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir.1978) ("[O]ne of the most serious deprivations suffered

by a pretrial detainee is the curtailment of his ability to assist in his own defense."),
*rev'd on other grounds*, *Bell v. Wolfish*, 441 U.S. 520 (1979).

After volunteering to apply several additional conditions to himself, Mr. Smirnov urged release under the Bail Reform Act. *See* Exhibit O at 12 (proposing that the Magistrate Judge require a personal recognizance signature bond; pretrial supervision in Nevada and the Central District of California, "to include electronic monitoring, maintaining his current residence, and no travel except as ordered to appear in the Central District of California;" surrender of his Israeli passport; and "[c]ompliance with any other conditions, orders or admonishments imposed by this Court, by the District Court in the Central District of California, or by any Pretrial Services Officer of either Court.").

### C. *After briefing and argument, the Magistrate Judge orders Mr. Smirnov released, but on conditions more stringent than those recommended by pretrial services.*

On February 20, 2024, the Magistrate Judge – having considered Mr. Smirnov's motion for pretrial release (Exhibit O), the Government's memorandum in support of detention (Exhibit N) and, critically, the pretrial services recommendation – held a hearing on the pending motions.

The crux of the Government's argument was (and, remains) that Mr. Smirnov is untrustworthy and that his appearance cannot reasonably be assured by *any* condition or combination of conditions. *See, e.g.*, Exhibit L at 6 ("[T]he defendant

has demonstrated he can't be trusted."), 7 (alleging that Mr. Smirnov "lied to his FBI handler), 10-13 (alleging he lied about net worth and cash in accounts).

While the Government claimed that Mr. Smirnov's "contacts with foreign intelligence services, specifically Russian intelligence services and operatives" were "extraordinary" (Exhibit L at 8), that claim was rightly flagged as disingenuous: it ignored that Mr. Smirnov's Government handlers directed him to cultivate the very sorts of international "contacts" that were – years later, at a bail hearing – being used to paint him as a "flight risk." *See id.* at 26-27 ("[T]he Court can't lose sight of the fact that a lot of the foreign travel was *at their behest* . . . . We're going to send you there. We're going to use you for our purposes, which is what [the Government did]. And now they turn around and tell Your Honor, "See, he travels everywhere.") (emphasis added).

The Magistrate Judge carefully probed whether (as the Government insisted) no conditions could possibly mitigate Mr. Smirnov's risk of flight – a risk the Magistrate Judge certainly countenanced in the case of an Israeli and United States dual citizen who routinely travelled abroad. *See, e.g.*, Exhibit L at 38 (agreeing that Mr. Smirnov's foreign connections present "a concern [that] . . . I should consider").

But the Magistrate Judge nevertheless determined – in light of the Bail Reform Act's presumption of release in cases like Mr. Smirnov's – that release conditions could still be fashioned and that the Government's concerns, while credible, were

not insurmountable. *See, e.g.*, Exhibit L at 38 ("I just don't know . . . that that is *as grave* a concern as the Government outlines.") (emphasis added); *see also id.* (Magistrate expresses skepticism that the Ukrainian-born Mr. Smirnov would work for United States intelligence, skip bail on his United States criminal case, and seek asylum in Russia, of all places: "[H]e probably thinks that's *not* the most attractive place to go . . . .") (emphasis added).

Thus, in response to the Government's claim that Mr. Smirnov lied to Pretrial Services in an attempt to conceal his net worth, the Magistrate Judge suggested a less sinister explanation – one that was particularly reasonable in a case where a non-English speaker is arrested and, without counsel, forced to answer detailed questions from an unknown administrative officer. "[Y]ou're so certain that these are just blatant misrepresentations," the Magistrate Judge told the prosecutor with some skepticism. "Why wouldn't it possibly be *confusion*, when he's just been arrested, he's been taken into custody, and somebody shows up and starts asking him questions?" Exhibit L at 12 (emphasis added).

Later in the hearing, defense counsel affirmed – with no objection from the prosecutor – that Pretrial Services had *only* questioned Mr. Smirnov about his personal accounts:

> Your Honor, we asked Pretrial Services about this question of financial disclosure because, when we read [the Government's] motion this morning, both [defense counsel] said, "What happened here?"

So we contacted the Pretrial officer. We asked to meet with [Officer McKillip]. And we asked her specifically, "Did you ask him about any *other* account than a personal account?" And the officer was candid and said no. *It's exactly why my client answered the question the way he did because he was not asked about anything else.*

Exhibit L at 25-26 (emphasis added).

The Magistrate Judge also questioned whether, as the Government claimed: 1) the United States would not be able to find Mr. Smirnov if he fled (*see* Exhibit L at 10: "You think the long arm of the United States of America couldn't find him on this planet?"), or 2) Pretrial Services would be unable to monitor him electronically. *See id.* at 23 (Magistrate asks "[w]hat if I put geographical limits on where he can go and we monitor that so that the minute he leaves . . . , Pretrial's notified of that?" Government: "My understanding . . . is that . . . there are lags, that . . . the geographic space is not tight enough to know if someone is in an airport as opposed to some other location."). The Government's "limited . . . understanding," was later shown to be just that: while it is possible for any defendant to cut off a monitoring bracelet and flee, electronic monitoring restrictions can, and often are, imposed as conditions of release. *See id*. at 41 (despite Government's protestation, Pretrial Services assures the Magistrate Judge: "We can put an exclusion zone around the airport so if he goes into the area of the airport, we will get notified.").

Having considered the parties' arguments and noted the applicable statutory principles (primarily, the Bail Reform Act and 18 U.S.C. § 3142), the Magistrate Judge issued a detailed analysis replete with findings of fact:

> [I]t's pretty clear . . . that Mr. Smirnov is a flight risk . . . . [but] [t]he bigger question . . . is whether or not there are conditions or a combination of conditions that can address those concerns.
>
> I do have concerns about his access to money . . . , but I also place those in the context of . . . the language issue, the nature of the pretrial interviews and how quickly they occur, he did not have counsel at the time, the context in which the questions were asked . . . . I don't know that [he was] . . . intentionally lying to Pretrial . . . .
>
> The other concern . . . is the allegations and his relationship with his handler . . . . [H]ow he deals with his handler . . . would probably be different than how he would treat a Court order or a Court decision . . . . [I'm not convinced that] . . . the lack of trust he showed, according to the Government, with his handler would rise to the level of a lack of trust that he would not follow *my* orders . . . .

Exhibit L at 36-37 (emphasis added).[6]

The Magistrate Judge concluded that the Government's attacks on Mr. Smirnov's credibility did not preclude release under the Bail Reform Act – especially where Pretrial Services had itself recommended release.

---

[6]     The parties and Magistrate Judge agreed that the sole detention issue before the court was the "flight risk issue," and that the parties had not argued (or even "raised") the issue of "danger to the community." Exhibit L at 35 ("[T]he danger prong . . . requires the Government to provide evidence of clear and convincing evidence that he's a danger to the community. That's not what they've asked or argued, and that's not what any of the parties have raised.").

[I] understand the concern about foreign intelligence agencies potentially resettling Mr. Smirnov outside of the United States, his connections to them, but I think on some level that's speculative as well . . . .

[T]his Court . . . puts a lot of stock into Pretrial Services and their investigation and their recommendations and their belief about whether or not they believe somebody can be supervised with conditions. *And in this case Pretrial Services believes, notwithstanding some of the issues that the Government's raised, and they acknowledge those issues, they believe that Mr. Smirnov can be supervised and that there are conditions that can be placed upon him* . . . . And so that carries weight with the Court as well . . . . [I]t's not just [defense counsel] saying his client should be released, but *Pretrial Services believes that conditions can be fashioned.*

Exhibit L at 37-40 (emphases added).

The Magistrate Judge thus imposed a battery of release conditions even more stringent than those proposed by Pretrial Services.

I'm finding today that the Government has *not* met their burden as it relates to conditions because I believe that conditions can be fashioned because Pretrial believes that . . . .

I'm going to release you on your personal recognizance, which is just your signature and promise to appear in court and to follow these conditions. *If you do not, that will be revoked and you will be detained* . . . .

First, you're to submit to supervision by Pretrial Services . . . immediately . . . and follow their direction for supervision.

I'm going to allow them to order you to seek employment . . . . [Y]ou're not going to be able to continue with your consulting business while this case is pending. You're going to have to figure out some other way to conduct business because *I'm not going to allow foreign travel. In fact, I'm not going to allow any travel.* So

11

you need to seek employment that Pretrial approves and that's appropriate while this case is pending.

*You're to surrender your U.S. passport and your Israeli passport to Pretrial Services immediately*. I believe that the Government took your United States passport. [Defense counsel] . . . shall give [the Israeli passport] to Ms. McKillip upon the conclusion of this hearing.

Number four, *you shall not obtain a passport or any other international travel documents*.

Number five, I'm going to order you that your travel is restricted to Clark County, Nevada . . . .  I'm going to allow the travel in Clark County alone and exclude you from the airport . . . .

Exhibit L at 40-42 (emphases added).

The Government immediately made an oral motion to stay the release order pending review in the Central District of California. The Magistrate Judge *denied the motion to stay* on the spot, and Mr. Smirnov was released. *See* Exhibit L at 45. Mr. Smirnov's Israeli Passport was given to United States Pretrial Services in Nevada.

On February 21, 2024, the Government timely filed with Judge Wright an application for review of the Magistrate Judge's release order. Exhibit F; *see also* Exhibit E (Feb. 23, 2024) (Smirnov's opposition).

**D.** ***While meeting with his attorneys in Las Vegas to discuss his defense two days after his release, Mr. Smirnov is arrested again on the same charges, detained without a hearing, and transported to California.***

On February 22, 2024, Mr. Smirnov visited his attorneys (for a second time after release) in their Las Vegas offices to prepare his defense. There, Mr. Smirnov was arrested on a second arrest warrant, detained, and ordered transported to California. *See* Exhibit I (referencing second arrest warrant). At the point of his second arrest, Mr. Smirnov had not been given the opportunity to respond to the Government's application for review of the release order.

Thus, and having received no process of any sort (including an advisement of rights or a hearing under Rule 5 of the Federal Rules of Criminal Procedure) as a result of his second arrest in a district other than the Central District of California, Mr. Smirnov filed an emergency motion to (among other things) block his transportation to California until he had received a second detention hearing. Exhibit H.

Later that day – that is, after Mr. Smirnov's second arrest, but before he could even file an opposition the Government's day-old application to review the release order – Judge Wright issued the following order, which was initially filed under seal:

> It has come to this Court's attention that *counsel for defendant* has sought an emergency hearing in the District of Nevada to arrange the release of Defendant Smirnov, *likely to facilitate his absconding from the United States.*

Defendant has been indicted by a grand jury sitting in the Central District of California. He was arrested on February 14, 2024 in the District of Nevada upon his arrival in the United States following an international flight. He was promptly brought before a magistrate judge who, while agreeing that the government had established a probability of Defendant fleeing the jurisdiction, but disagreeing that no conditions nor combination of conditions could be fashioned to assure his appearance for trial or other mandated court appearances. The magistrate judge then issued an order for Defendant's release, with conditions.

The government then sought reconsideration or re-examination by this Court of the Nevada release order. That motion for reconsideration has been granted and this Court issued an arrest warrant specifying that upon his arrest Defendant should be brought promptly to this Court. Indeed, at 9:00 a.m. Monday, February 26, 2024 the USMS is to bring Defendant to courtroom 5-D located at the First Street Courthouse located at 350 West 1st Street, Los Angeles, CA for a detention hearing.

**The U.S. Marshal Service is advised there is to be no deviation from this Order**.

Exhibit I (Feb. 22, 2024) (final boldface emphasis in original).[7]

---

[7]     In the wake of this ruling – particularly the court's suggestion that "defense counsel," in seeking their client's release, was "likely" trying "to facilitate his [unlawful] absconding from the United States," Mr. Smirnov filed an emergency petition for writ of mandamus in this Court in 9CA No. 24-970. *See* Ninth Circuit Clerk's Record ("9CA-CR") 7 (Feb. 22, 2024). The gist of the petition was that there were no provisions permitting the re-arrest of Mr. Smirnov after he had been ordered released, and that any such provision would undermine the purpose of a defendant having the right to a Rule 5 hearing in the district where he was arrested if (as here) that district is not where the case is pending. It would also undermine the Magistrate Judge's prior denial of the Government's request to stay the release order pending District Court review in the Central District of California. Mr. Smirnov argued that Judge Wright's unfounded accusation that counsel was "trying to facilitate" their client's unlawful flight warranted reassignment.

Pursuant to this order – which the court issued before the defense had even responded to the Government's application for review of the release order – Mr. Smirnov was transported in the middle of the night to California. He did, however, manage to file an opposition (Exhibit E) and a supplement (Exhibit D), before the date set by Judge Wright to address the release order under 18 U.S.C. § 3145(c).

### E. In ordering detention after a brief hearing, the district court makes no factual findings and no discussion of the record evidence, and misapprehends the correct statutory presumption to apply to Mr. Smirnov's case.

While Judge Wright's "review" contained the trappings of a *de novo* inquiry under 18 U.S.C. § 3145(c), the outcome – clearly foreshadowed by the order accusing defense counsel of "facilitating" an unlawful flight and charging the United States Marshal, in bold lettering, that "**there is to be no deviation from this order**" – had already been determined: Mr. Smirnov was going to be detained. *See* Exhibit D at 12-13 (defendant argues that "[w]hile [a district court] reviews the Magistrate Judge's release order under a *de novo* standard, . . . that non-deferential standard does not justify what [happened] here: that is, prejudging of a detention issue . . . . The suggestion that defense counsel [was] participating in an unlawful plot by

_____

In any event, on February 25 (Sunday), this Court found that Mr. Smirnov had "not demonstrated a clear and indisputable right to the extraordinary remedy of mandamus;" this Court denied his petition and his motion to "reassign the case to a different district court judge." 9CA-CR 16.1 at 1-2. This Court concluded, however, by stating: "We express no opinion as to the disposition of the scheduled detention hearing before District Judge Wright." *Id*. at 2.

15

advocating for release under Section 3142 is wrong.") (internal citations and quotations omitted).

Indeed, Judge Wright made the following two remarks at the outset: 1) "Just to let you know what I'm thinking, I'm not satisfied that there are conditions or combinations of conditions which will establish or satisfy my concern as to whether or not you will not flee the jurisdiction," and 2) "I am concerned about what appears to me to be a habit or practice of making false statements . . . ." Exhibit B (Transcript from Feb. 26, 2024) at 6-7.

Defense counsel nevertheless argued that release was warranted under the Bail Reform Act. Counsel noted that Mr. Smirnov had "worked with the United States Government for at least a decade" and that "[t]here have never been any accusations of false statements attributed to him in all [those] years . . . particularly with respect to providing intelligence for both the FBI and the military." Exhibit B at 8 (adding: "[S]o right now, Your Honor, the only false statements that we're concerned with are the ones in the indictment; and of course . . . that has not been tried to a jury or before Your Honor . . . .").

Mr. Smirnov also had proposed several additional conditions of release that would alleviate the concern related to potential flight. Those conditions included: 1) a Corporate Surety Bond; 2) appointment of a third party custodian; 3) House

arrest with the exception of meeting with legal counsel and medical providers; 4) Financial restrictions; 5) Execution of a Waiver of Extradition.  Exhibit D.

Noting that the Bail Reform Act favored release and that "[t]his is not a presumption [of detention] case," Exhibit B at 8, the defense further argued: 1) that the applicable guidelines in the event of a conviction were less than "[t]he penalty for bail jumping;" 2) that Mr. Smirnov's "significant other" (together with other family members) were in the courtroom that day; 3) that Diana Lavrenyuk's son, Marine Sergeant Nikolay Lavrenyuk, had sworn that Mr. Smirnov would not "disrespect" the court by fleeing; 4) that Mr. Smirnov had lived in Las Vegas and Los Angeles for many years; 5) that, as a dual national, he had already turned in his Israeli and United States passports; 6) that counsel had personally called the consul for "the Consular Affairs [Office] for the Israeli Embassy in Los Angeles," who assured him that Judge Wright could "ask[]the Israeli government not to issue him any new passports" during his release; and, 7) that electronic monitoring could effectively be installed to track Mr. Smirnov's location. *See id*. at 8-12, 13-16.

Critically, in making these arguments, the defense emphasized that "[b]oth pretrial officers [in Nevada and California], entrusted with giving their best opinion to [the] Article III judges, have both said that *he can have conditions that will work*." Exhibit B at 11 (emphasis added); *see also* Exhibit D at 3 (defendant's supplement to opposition states: "United States Pretrial Services Officer Fernando Basulto, from

the Central District of California, performed *additional investigation* so that a recommendation regarding custodial status could be made to this Honorable Court. *Officer Basulto, similar to United States Pretrial Services . . . in the District of Nevada, has recommended that Mr. Smirnov be released on conditions*.") (emphasis added); *but compare* Exhibit B at 13-14 (at the hearing, Judge Wright states there was just one report, from Nevada: "One of those pretrial offices has not interviewed your client.").

A particularly revealing exchange occurred when the court simply decided that Mr. Smirnov was either the unjust beneficiary of governmental largess or, worse, a common thief:

> DEFENSE COUNSEL: Okay. The first full day he was out [of custody in Las Vegas], he worked with us. The second full day he was out, he worked with us and that's when he got arrested. But Your Honor, he retained us . . . . with a significant legal fee which bespeaks the fact that someone who is going to flee is not going to give lawyers money and then take off and squander the money.
>
> THE COURT: *Unless it's not your money*.
>
> DEFENSE COUNSEL: Sorry?
>
> THE COURT: Never mind.

Exhibit B at 14-15 (emphasis added).

In response, the Government reprised its prior arguments, insisting that Mr. Smirnov was untrustworthy and that his foreign contacts foreclosed fashioning

conditions of release. *Compare* Exhibit B at 16-22.[8] Defense counsel offered a

brief rebuttal. *See id.* at 22-24.

The district court – after defense counsel had reminded Mr. Smirnov to obey

his release conditions – then offered the following comments:

> I know. I wish that's all it took. "Please don't disappoint me."
>
> I'm not going to get into this. I've read everyone's papers, I understand the arguments.
>
> One of the things that I haven't been able to quite understand is the disparity in the money that's coming in – I believe that was $10,000 a month – and the money that's going on [sic]. And you haven't brought it up, I'm not asking you 2 directly. I'm just going to let it go, but it's just one of those things, one of those unresolved things and there's a whole lot of them and I will make this one comment.
>
> There is nothing garden variety about this case. To compare this to all the cases that we normally see, this is an outlier. Okay? So . . . .

---

[8]      The Government suggested for the first time that Mr. Smirnov, in addition to being a flight risk, was also a danger to the community.  *See* Exhibit B at 18 ("[H]e had nine firearms, including an assault-styled weapon in his home and so law enforcement chose a safe location in which to contact him."). The Government failed to add that all of Mr. Smirnov's firearms were legal and, as such, they were all left behind, unseized, when the FBI executed their search warrant. Moreover, as shown, the "danger to the community" argument was never raised in the Magistrate Court proceedings and is, therefore, waived. *See supra* at n.6 (Magistrate Judge notes that neither party has raised "danger to the community" claim); *cf. Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010) (noting, in regard to an argument not raised in the district court, that "arguments . . . raised for the first time on appeal" are "deem[ed] . . . waived").

> All right. I have not changed my mind. This man will be
> remanded pending trial.

Exhibit B at 24-25.

It is remarkable that these few remarks comprised the entirety of Judge Wright's in-court "ruling" on the detention issue; but it is even more remarkable that the written "Order of Detention" docketed later that day (*see* Exhibit A) offered *even less* "analysis" than its skeletal predecessor. Thus, the written order contained *no* findings of fact, *no* explanations as to where (or in what respect) the Magistrate Judge erred, and *no* effort to address that Mr. Smirnov's charges warranted a presumption of *pretrial release*, and not (as evidenced by the court's wrongly-checked box) pretrial detention. *See* Exhibit A at 2, §I(c) (district court checks box wrongly indicating that "the Government is entitled to a rebuttable *presumption that no condition of combination of conditions will reasonably assure the defendant's appearance* as required . . . .") (emphasis added), at 3, §V(a) (after checking box marked, "flight risk," court adds no specific written findings of fact to support that conclusion).

This appeal followed.

## IV.    SUMMARY OF ARGUMENT

The district court's pretrial detention orders suffer from two fatal infirmities. After defendant was arrested in the District of Nevada on a warrant and charges out of the Central District of California, the Nevada magistrate judge – after holding a

hearing and issuing factual findings – followed the recommendation of the pretrial services office and ordered defendant released on conditions. The Government sought review in the district court and asked the magistrate to stay the release. The magistrate denied the stay.

Two days later, while defendant was meeting with his attorneys, the district court had him arrested again, detained, and – with no notice or opportunity to be heard – transported to California. The district court further suggested in a written order that defense counsel – by merely arguing for their client's presumptive release under the Bail Reform Act and protesting his process-free second arrest – was "likely . . . facilitat[ing] his absconding from the United States," in violation of federal law and his conditions of release.

On February 26, 2024, the court held a hearing on the Government's motion to review the release order, stating at the outset that its mind was made up to order defendant detained. After the parties argued their positions, the court made some brief remarks, said it had "not changed my mind," and ordered defendant detained. The court followed this oral ruling with a written order of detention, in which the court mistakenly ruled that the charges in the indictment – a pair of false statements – triggered the presumption of detention.

Both detention orders are defective. First, they fail to comport with Rule 9(a)'s express requirement (reinforced by this Court's precedent) that the district court state

its "reasons" to support its order: here, the district court made none. Second, more broadly, the orders fail to address the statutory presumption favoring release, the evidence and arguments adduced by the defendant, or even the release recommendations set forth by two pretrial services offices (in Nevada and California) and the magistrate judge.

For these reasons, this Court should order the defendant released under 18 U.S.C. § 3142; alternatively, it should remand this case to the district court with orders to hold a second detention hearing and furnish an order sufficient to permit meaningful appellate review.

## V.    <u>ARGUMENT</u>

**A.    *Because the district court's order did not provide any factual basis for its decision to detain Mr. Smirnov and disregarded two pretrial services officers and a United States Magistrate Judge, this Court should remand this case for a rehearing and amended order that comports with Rule 9(a)(1) and, further, order Mr. Smirnov released under Rule 9(a)(3).***

Rule 9(a) of the Federal Rules of Appellate Procedure governs appeals of pretrial detention orders issued before a defendant is convicted. That Rule provides in part:

> (1) The district court *must* state in writing, or orally on the record, *the reasons for an order regarding the release or detention of a defendant in a criminal case.* A party appealing from the order must file with the court of appeals a copy of the district court's order and the court's statement of reasons as soon as practicable after filing the notice of appeal. An appellant who questions the

factual basis for the district court's order must file a transcript of the release proceedings . . . .

(3) The court of appeals or one of its judges may order the defendant's release pending the disposition of the appeal.

Fed. R. App. 9(a) (emphases added).

When a lower court's "reasons for [its detention] order" amount to a few

offhand remarks and the rote checking of a box in a form order, effective appellate

review – even under a deferential standard, and even for an already convicted

defendant under Rule 9(*b*) – becomes impossible.

> Rule 9(b)'s writing requirement "performs a vital mission," . . . both for litigants on appeal and for appellate courts. Only if provided with reasons for the district court's decision can an appellant intelligently renew a bail motion in the court of appeals . . . . *Without specific findings, we cannot effectively and efficiently review a bail motion decision* . . . . *See United States v. Stanley*, 469 F.2d 576, 584 (D.C. Cir. 1972) ("Without elucidation of the basis for the judge's action, we cannot fairly evaluate the merits of either the application or the judge's decision thereon.").

> Moreover, a district court's reasons for its decision must be adequately explained; *conclusory statements are insufficient. See Stanley*, 469 F.2d at 585 (judge must fairly explain ruling so that it may be intelligently reviewed); . . . *United States v. Thompson*, 452 F.2d 1333, 1336 n.7 (D.C. Cir. 1971) ("*A mere parroting of the provisions of the applicable statute is not an adequate substitute for a full statement of reasons.*"), *cert. denied*, 405 U.S. 998 (1972); *United States v. Manarite*, 430 F.2d 656, 657 (2d Cir.1970) (extensive colloquy without a concluding statement of reasons for decision insufficient).

23

*United States v. Wheeler*, 795 F.2d 839, 841 (9th Cir. 1986) (emphases added); *see also United States v. Swanquist*, 125 F.3d 573, 575 (7th Cir. 1997) (stating that "[t]he importance of this requirement [for a statement of factually specific bail findings] has been well-documented") (citing *Wheeler*); *United States v. Gonzales*, 852 F.2d 1214, 1216 (9th Cir. 1988) (apart from some rote recitations, "the district court neither considered nor mentioned the 14 conditions prescribed in 18 U.S.C. § 3142. Aside from boiler-plate references to the charges and to the unavailability [of a half-way house], the district court's bare conclusions provide no meaningful consideration of the statutory requirement that the denial of bail be based upon facts sufficient to support the detention and capable of meaningful review by this court.") (dissenting opinion).

This precedent compels this Court's immediate intervention in Mr. Smirnov's case, particular with regard to orders issued in this case, *supra* at § III(e). Here, in ordering detention, Judge Wright did not even mention – let alone discuss – 1) the Magistrate Judge's analysis and reasoning, 2) the two pretrial services officers' release recommendations,  3) the in-court presence of Mr. Smirnov's friends and relatives, 4) the heartfelt letters written to the court by two of those attendees (Ms. Linor and Diana's son, Nikolay) on his behalf, 5) his serious medical condition, 6) the virtual impossibility of a segregated detainee meeting meaningfully with his attorneys to prepare an effective defense, or 7) any of the additional conditions of

release proposed in Mr. Smirnov's initial motion for release *and* his supplement to his opposition. Again, Judge Wright did not mention (let alone discuss) *any* of this evidence during the hearing or in his written order.

Even under the most deferential appellate review, such bail rulings cannot survive scrutiny under *Wheeler* and Rule 9(a). Stated differently, meaningful appellate review is not possible given the threadbare orders on offer in this case. *See Wheeler*, 795 F.2d at 841 ("Without specific findings, we cannot effectively and efficiently review a bail motion decision."); *Gonzales*, 852 F.2d at 1216 (condemning "the district court's bare conclusions" and failure to furnish "facts sufficient to support the detention and capable of meaningful review by this court"). Thus – unless it outright grants the relief urged *infra* at § V(b) – this Court should, at a minimum, reverse the district court's detention orders under *Wheeler* and Rule 9(a), remand this case for a second detention hearing and written order, and order that Mr. Smirnov be released from custody "pending the disposition of [his] appeal. *See* Fed. R. App. 9(a)(3).

### B. Alternatively, this Court should hold that the district court clearly erred in ordering Mr. Smirnov detained before trial and should, further, order him released on the conditions set forth in the record.

"Factual findings underlying a district court's pretrial release or detention order, including whether a defendant is a flight risk . . . , are reviewed under the clearly erroneous standard, 'coupled with an *independent review* of the facts, the

findings, and the record to determine whether the order may be upheld.'" *United States v. Fidler*, 419 F.3d 1026, 1029 (9th Cir. 2005) (emphases added) (quoting *Gebro*, 948 F.2d at 1121); *see also United States v. Townsend*, 897 F.2d 989, 993–94 (9th Cir. 1990) (while factual findings are reviewed deferentially, "the *conclusions* based on such factual findings . . . *require the exercise of sound judgment* as to the values underlying the legal principles . . . . Accordingly, *we make an independent examination of the record* to determine whether the pretrial detention order is consistent with the defendant's constitutional and statutory rights and arrive at our conclusion *de novo*.") (emphases added).

Thus, while deference is owed to a district court's factual findings in a bail proceeding (had there been any in this case), this Court's "conclusion" (*Townsend*, 897 F.2d at 993–94) and its "independent review" (*Fidler*, 419 F.3d at 1029) of the facts, findings, and contents of the record remain indispensable.

Any fair-minded, independent review of the present record compels release. In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court stated that, in the United States, liberty is the norm, and detention the carefully limited exception. The Court found that the Bail Reform Act of 1984 operates only on individuals who have been arrested for particularly serious offenses, and carefully delineates the circumstances under which pretrial detention is permitted.

The Act does allow a court to detain a defendant before trial if no release conditions "will reasonably assure the appearance of the person and the safety of any other person in the community." But it is only under those rare circumstances where no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community, that a court may constitutionally order the pretrial detention of a never-convicted, presumptively innocent American like Mr. Smirnov.

These principles were reinforced in *Gebro*, where this Court stated that the Bail Reform Act required release of persons under the least restrictive condition or combination of conditions that will reasonably assure appearance of the person and the safety of community. *See Gebro*, 948 F.2d at 1121. "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Id*. (citing *Motamedi*, 767 F.2d at 1405). Finally, as noted, "[o]n a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk . . . ." *Id*.

Citing 18 U.S.C. § 3142(g), the *Motamedi* Court stated: "The court must take into account available information concerning the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, including his character, physical and mental condition,

family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Motamedi*, 767 F.2d at 1407.

While the district court never bothered to cite this burden of proof, this Court should now rule – after an "independent examination of the record," *Townsend*, 897 F.2d at 994, and the never-applied factors in 18 U.S.C. § 3142(g) – that the Government has not met it.

1.   <u>Nature and seriousness of the offense charged</u>.

As stated above, Mr. Smirnov is charged under 18 U.S.C. § 1001 and 18 U.S.C. § 1519, which accuse him of making false statements in connection the current president's (and, particularly, the current president's son's) connection to a Ukrainian business deal. These allegations do not trigger the statutory presumption of pretrial detention and they warrant – even in the event of conviction and a full application of sentencing enhancements – only a modest custodial sentence. *See supra* and Exhibit E at 4, n.1. The Government never argued that Mr. Smirnov posed a danger to the community. Mr. Smirnov thus asserts that the "nature and seriousness" of the offenses tips in his favor.

2.      Weight of evidence against defendant.

This Court has held that the "weight of the evidence" is the least important factor to be considered during the pretrial detention hearing. *See, e.g., Motamedi*, 767 F.2d at 1408. This guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Id.* "The [ ] factor may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.*; *see also United States. v. Armstrong*, 2010 WL 5102203 (D. Ariz. 2010) (granting pretrial release to defendant charged with two separate armed bank robberies while recognizing that the evidence against the defendant was strong because 1) surveillance photos showed her committing the robberies and 2) she admitted her participation).

While it is not clear what the government's evidence consists of at this preliminary stage, it is respectfully submitted that when this statutory factor is considered in conjunction with the others, the balance again weighs in favor of release.

3.      Defendant's character, physical and mental condition.

As attested to by the letters submitted to – and ignored by – Judge Wright, Mr. Smirnov has an exemplary character, cherishes his United States citizenship,

29

and would never disobey a court order. He is in good mental and physical health, apart from his ongoing medical issues related to his eyes.

> 4.     Defendant's family and community ties.

Mr. Smirnov has lived in Las Vegas for two years; lived in California for the 16 years before that; and has relatives, close friends, and significant others living in the United States. Thus, as recognized by the pretrial services offices, he has ties to the community and the strong support of family and friends.

> 5.     Defendant's past conduct, history relating to drug and alcohol abuse, criminal history.

Mr. Smirnov has no criminal history, no indication of drug use, and or no indication of alcohol abuse.

> 6.     The nature and seriousness of danger to any person or community that would be posed by defendant's release.

This factor, as noted, was never raised as a basis for detention. Nevertheless, Mr. Smirnov poses no danger to the community. Rather, he is a middle-aged American man with good friends, bad eyes, and no criminal history. This factor also militates in favor of release.

7.      Conditions of release (many of which have been proposed by Mr.
        Smirnov) can be fashioned to assure his future appearances, as found
        by the Magistrate Judge and the pretrial services offices.

As noted above, federal courts embrace the "strong presumption against

detention." *See, e.g., United States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.D.C. 2009);

*United States v. Karni*, 298 F. Supp. 2d 129 (D.D.C. 2004).

This presumption is particularly apt in this case. Here, Mr. Smirnov, having

been released on conditions, spent the next two days in his Las Vegas lawyers'

office, preparing his defense. Had Mr. Smirnov been nearly as wily as the

Government endlessly alleges, he would have fled the moment he had the chance.

In both *Hanson* and *Karni*, the courts held that conditions for release could be

fashioned to ensure the appearance of defendants who – unlike the Mr. Smirnov –

did not have significant ties to the United States and who did pose a serious danger

to the United States. In *Karni*, the defendant was an Israeli national who had been

living in South Africa for 18 years. He was charged with violating federal law by

allegedly acquiring "products that are capable of triggering nuclear weapons and

[exporting] them to Pakistan, via South Africa, avoiding the requirement of

obtaining an export license for the devices." *Karni*, 298 F. Supp. 2d at 130. Despite

the serious (indeed, lethal) nature of his crime and the fact that he "had no ties to the

United States or to the Washington, D.C. area," the court determined that he should

be released subject to certain conditions, including release into third-party custody, home detention, and electronic monitoring.

In *Hanson*, the defendant was a Chinese citizen who had become a naturalized citizen of the United States. She was alleged to have illegally exported unmanned aerial vehicle ("UAV") autopilot components to the People's Republic of China. Hanson allegedly carried these UAV components to Germany and handed them to an acquaintance, who took them to China. The Government represented that these sophisticated components enabled UAVs to perform military tasks without the aid of human pilots, including autonomous take offs and other tactical uses. Moreover, the Government's expert opined that UAVs equipped with these components could be used to simulate stealth planes and cruise missiles, and could potentially be armed. The Government argued that Hanson was a flight risk because 1) she had closer ties to China than to the United States; 2) her marital relationship in the United States was faltering, and she had no other family ties here; 3) she faced a steep jail sentence and the government had strong evidence against her; 4) it would have been easy for her to get a new Chinese passport and depart to China; 5) and she had strong business interests, family ties, and property in China. After hearing the evidence, the court – like the Magistrate Judge in this case – found that conditions could be fashioned that would reasonably assure the defendant's presence.

These cases (and others like them) show the types of conditions that can be fashioned to ensure that Mr. Smirnov attends all Court hearings.

8.    Additional, Critical Factors Unique to This Case.

Since his initial arrest on February 14, 2024, Mr. Smirnov has been detained in various facilities in Nevada and California. One factor is common to all of them: they all deny Mr. Smirnov meaningful access to his chosen counsel.

Given the foregoing – together with the volume of records expected to be produced in case and the overriding need for in-person trial preparation between attorney and client – it will be virtually impossible to mount an effective trial defense through intermittent telephone calls and short jail visits.

The federal courts warn that pretrial detention can hamstring trial preparation:

> The Supreme Court has recognized that "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during trial itself." *Maine v. Molton*, 474 U.S. 159, 170, 106 S. Ct. 477 (1985); *see also Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir.1978) ("[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense."), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979).

*Estrada v. Munoz*, No. 2010 WL 1999525, at *2 (C.D. Cal. May 17, 2010).

Moreover, with Mr. Smirnov in custody, he will not be able to facilitate his counsel's contact with critical witnesses and assist with language barriers that are sure to exist. Thus, in *Kinney v. Lenon*, 425 F.2d 209 (9th Cir. 1970), this Court found the detention of a juvenile to interfere with his due process right to a fair trial,

as the defendant was likely the only person with whom witnesses would cooperate with due to "age and race." Here, with the cultural and language barriers posed by a Ukrainian-born citizen of the United States and Israel, it is anticipated that Mr. Smirnov will be the only person that can effectively contact and facilitate interviews of critical witnesses for his defense.

Keeping Mr. Smirnov in custody will thus work an irreparable harm to his ability – indeed, right – to prepare effectively for trial.

## VI. <u>CONCLUSION</u>

This case cries out for appellate intervention. Mr. Smirnov was previously found to be "releasable" by two Pretrial Services officers and one Magistrate Judge: these findings were ignored and never mentioned by the district judge. Mr. Smirnov was rearrested a second time for the same offenses and hauled off to California without a hearing, without an appearance, and without an opportunity to respond – by the same judge, who had suggested (with no basis) in a written order that defense counsel – by merely arguing for their client's presumptive release under the Bail Reform Act and protesting his process-free second arrest – was "likely . . . facilitat[ing] his absconding from the United States." When Mr. Smirnov appeared for his hearing in the Central District of California, the judge ordered him detained and later provided a "form order" that identified the case as a presumption of detention case, which it is not.

After an independent review of the record this Court should order Mr. Smirnov released on the conditions previously imposed (by the Magistrate Judge) and proposed (by Mr. Smirnov), as well as any other conditions this Court deems necessary to ensure his appearances, as ordered by the district court.

DATED this 8th day of March, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

  /s/ Richard A. Schonfeld
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Appellant
ALEXANDER SMIRNOV

## STATEMENT OF RELATED CASES

Appellant previously filed his Emergency Petition for Writ of Mandamus under Circuit Rule 27-3, with this Honorable Court. *See* Ninth Circuit Court of Appeals Case No. 24-970. Appellant is not aware of any other related case pending in this Court.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that: the foregoing brief uses 14-point Times New Roman proportionately spaced type; text is double spaced and footnotes are single spaced; a word count of the word processing system used to prepare the brief indicates that the brief (not including the table of contents, the table of authorities, the statement of related cases, the certificate of compliance, or the certificate of service) contains approximately 8,045 words.

Dated this 8th day of March, 2024.

/s/ Richard A. Schonfeld
RICHARD A. SCHONFELD, ESQ.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March, 2024, I caused the forgoing

document to be filed electronically with the Clerk of the Court through the

CM/ECF system for filing; and served on counsel of record via the Court's

CM/ECF system including:

Derek Edward Hines
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue NW Room B-200
Washington, DC 20530
Email: deh@usdoj.gov

Leo J. Wise
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW, Room B-200
Washington, DC 20530
Email: LJW@USDOJ.GOV

Christopher Michael Rigali
Office of Special Counsel, U.S. Dept. of Justice
950 Pennsylvania Avenue NW, Room B-200
Washington, DC 20530
Email: christopher.rigali2@usdoj.gov


/s/ Rosemary Reyes
Employee of Chesnoff & Schonfeld